IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**RICKEY BANKS, doing business as Banks' IT Services, doing business as Banks Professional Services, LLC**                                                                                                         **PLAINTIFF**

v.                                                            CIVIL ACTION NO. 5:21-CV-81-KS-RHWR

**JEFFERSON COMPREHENSIVE HEALTH CENTER, INC., et al.**                                                                                     **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This cause comes before the Court on the Motion for Summary Judgment [32] filed by Defendants Jefferson Comprehensive Health Center, Inc. (JCHC), Regina Reed, James Walker and Arnell Harried. Plaintiff's response was due on or before May 31, 2022, *see* [35], but Plaintiff has failed to respond. Based on the analysis below, the Court finds that motion is well taken and will be granted.

### I. SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). Although Plaintiff has not filed a response, in the Fifth Circuit, a district court may not grant a "default" summary judgment on the ground that it is unopposed. *Morgan v. Fed. Express Corp.*, 114 F. Supp. 3d 434, 437 (S.D. Tex. 2015) (collecting cases).

Even in the context of unopposed motions for summary judgment, the movant must still show that there is no genuine issue of material fact, and that it is entitled to summary judgment as a matter of law. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 363 n.3 (5th Cir. 1995). When a

motion for summary judgment is unopposed, a court may accept the movant's evidence as undisputed. *Morgan*, 114 F. Supp. 3d at 437 (quoting *UNUM Life Ins. Co. of Am. v. Long*, 227 F. Supp. 2d 609 (N.D. Tex. 2002)). Nevertheless, if the moving party fails to meet its burden, the Court must deny its motion for summary judgment. *Hetzel*, 50 F.3d at 362 n.3.

**II. BACKGROUND AND STATEMENT OF FACTS**

On August 31, 2021, Plaintiff filed his Complaint alleging causes of action for 1) Violations of the Fair Labor Standards Act; 2) Breach of Contract; 3) Defamation; 4) Intentional Infliction of Emotional Distress/Tort of Outrage; and 5) Tortious Interference with Employment, Business or Contractual Relations against each of the Defendants. The case arises from the provision of information technology services at JCHC.

On or about January 1, 2017, Plaintiff Banks Professional Services, LLC, purported to be a limited liability company[1], entered into an Information Technology Services Agreement with Defendant JCHC to provide certain technical computer-related services. [32-1] at Ex. A. It provided these services on an intermittent basis over several years. [32-6] at ¶6. On occasion a worker associated with Plaintiff would either perform those services or assist Plaintiff in providing them. [32-7]. The IT services were performed at the time of Plaintiff's choosing within parameters that minimized disruption to the work of JCHC and permitted Plaintiff to perform the required work. [32-6] at ¶7. JCHC paid in full all of the invoices Plaintiff submitted for IT services. [32-6] at ¶8.

By its plain terms, the Agreement could be terminated on 30 days' written notice by certified mail, facsimile transmission, or in person. [32-1], Ex. A at p. 1. On or about May 14, 2021, JCHC sent Plaintiff a letter terminating the Agreement via certified mail. [32-6] at ¶9;

---

[1] According to defense counsel, no entity by that name is listed with the Mississippi Secretary of State's website as of October 9, 2021 or on May 11, 2022. The LLC may have been formed in another jurisdiction but defense counsel states that she was unable to locate any such filing.

[32-6] at pp. 4-8. The letter was returned undeliverable. *Id*. On or about June 28, 2021, JCHC sent a follow up letter to Plaintiff advising him of the May letter and confirming a recent telephone call wherein the Agreement's termination was communicated to him a second time, and JCHC requested copies of the account passwords and return of JCHC's company property. [32-1] at Ex. B.

Plaintiff also operated a separate business, Banks' Professional Janitorial/Landscaping Services aka Banks Professional Janitorial Services, that provided janitorial and maintenance services to JCHC. [32-6] at ¶10.

At all relevant times, Defendants Regina Reed, James Walker, and Arnell Harried served on the board of JCHC. [32-1] at ¶¶ 21, 23, 25. Plaintiffs' Complaint alleges that these individual Defendant board members made false statements about him including the following

- Prior to June 28, 2021, Defendant and Board Chairperson Regina Reed stated that Plaintiff "had the building bugged." [32-1] at ¶ 21;

- In May of 2021, Defendant and Board Vice Chairperson James Walker stated to the other board members during a special meeting that "there was a white truck parked on the lot after hours," which falsely insinuated that Plaintiff was trespassing and committing theft,[2] and he urged the board to pursue "criminal charges" against Plaintiff. [32-1] at ¶ 24;

- At a board meeting on August 26, 2021, an issue regarding missing DirecTV receivers was discussed. Defendant Arnell Harried publicly stated at that meeting to the entire board that "Mr. Banks may be the one stealing cable."[32-1] at ¶¶ 28, 29.

---

[2] Plaintiff alleges that the insinuation arose because Defendant board member Arnell Harried asked Defendant Walker "why didn't [he] call the police." [32-1] at ¶ 25.

### III. DISCUSSION

Defendants argue that the Federal Labor Standards Act claim for unpaid wages and/or unpaid overtime wages is without merit. Plaintiff performed work for JCHC and was properly classified as an independent contractor. Defendants then argue that Plaintiffs' breach of contract claim is without merit because JCHC provided the requisite 30 days' written notice and paid in full all of the invoices it received for IT services, thus owing Plaintiff nothing. Defendants also argue that the defamation claims fail because the alleged statements were protected by a qualified privilege. Finally, Defendants argue that Plaintiffs' claim for intentional infliction of emotional distress fails because the conduct complained does not evoke outrage as a matter of law and that like Plaintiffs' defamation claim, the claim for tortious interference fails because the conduct was privileged.

### A. FLSA Claim

The Fair Labor Standards Act requires employers to pay employees at least one-and-one-half times the regular hourly rate for hours worked in excess of forty hours per week. *See* 29 U.S.C. § 207(a)(1). Independent contractors are exempt from such requirement. *See Hobbs v. Petroplex Pipe & Constr., Inc.*, 946 F.3d 824, 829 (5th Cir. 2020).

The Fifth Circuit has held that the "relevant question is whether the alleged employee so economically depends upon the business to which he renders his services, such that the individual, as a matter of economic reality, is not in business for himself." *Thibault v. Bellsouth Telecomms., Inc.*, 612 F.3d 843, 845 (5th Cir. 2010). In evaluating the issue, the Court utilizes "five non-exhaustive factors" to guide the inquiry. These "economic realities" or *Silk* factors[3] are: "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's

---

[3] *See United States v. Silk*, 331 U.S. 704 (1947).

opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship." *Id.*; *see also Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019). "No single factor is determinative. Rather, each factor is a tool used to gauge the economic dependence of the alleged employee, and each must be applied with this ultimate concept in mind." *Hobbs*, 946 F.3d at 829 (internal citations omitted).

Here, the relevant question, as in *Thibault*, compels the conclusion that Plaintiff was "in business for himself." 612 F.3d at 845. Plaintiff ran a business providing IT services. His company entered into a written agreement for those services and submitted invoices for services rendered. It appears Banks Professional Services, LLC or Banks' IT Services employed an "in-line engineer" to assist in providing those services. Plaintiff provided technical computer services within his expertise and outside of the expertise of JCHC.

Turning to the *Silk* factors, JCHC exercised virtually no control over the IT services, having hired Plaintiff to provide them; Plaintiff employed individuals to assist him in performing the work that otherwise had no relationship to JCHC, and Plaintiff had an opportunity for profit. In addition, the services provided were sporadic and unique over a span of time as opposed to rote or regular employment work and the services were provided at the time of Plaintiff's choosing. Another fact that points to an independent contractor relationship is that Rickey Banks also operated a separate business that provided janitorial and maintenance services to JCHC. As such, Plaintiff was running two independent businesses that both profited from JCHC and neither of which were employees.

Based on the foregoing, the Court finds that Plaintiff was an independent contractor and not an employee subject to the provisions of the Fair Labor Standards Act. Therefore, JCHC is entitled to judgment as a matter of law.

### B. State Law Claims

In a diversity case, a federal court applies state substantive law as it would be applied by the state's highest court. *See Correct RX Pharmacy Servs., Inc. v. Cornerstone Automation Sys., L.L.C.*, 945 F.3d 423, 429 (5th Cir. 2019). As such, the Court will look to Mississippi law to address the remainder of the claims.

### 1. Breach of Contract

Under Mississippi law, "[a] breach-of-contract case has two elements: (1) the existence of a valid and binding contract, and (2) a showing that the defendant has broken or breached it." *Keystone Real Est. Lending Funds, L.P. v. Fletcher*, No. 1:19CV263-HSO-JCG, 2020 WL 4690059, at *3 (S.D. Miss. Jan. 27, 2020) (quoting *Maness v. K & A Enterprises of Mississippi, LLC*, 250 So. 3d 402, 414 (Miss. 2018)).

According to the Complaint, one basis for the breach of contract claim is the allegation that Defendant's June 28, 2021 letter did not provide the 30-day notice necessary to terminate the contract. [32-1] at ¶¶ 13-17. The undisputed facts establish that in fact, indeed a notice earlier than the June 28, 2021 letter was sent. Defendants' evidence reveals that on May 14, 2021, JCHC mailed a certified letter to Plaintiff terminating the IT services and providing him 30 days' notice of cancellation of the contract. The letter was sent to the address provided in the contract (and where other mail has been delivered) but it was returned undeliverable. JCHC then sent the second, follow up letter (to the same address) dated June 28, 2021, reiterating the termination of the contract. Therefore, the termination was valid and a breach of contract on this basis fails.

Plaintiff also alleges a breach of the contract for failure to pay for services rendered since February 2020. [32-1] at ¶ 18.  JCHC avers, with no evidence to the contrary, that it has paid each and every invoice that Plaintiff submitted to it for IT services. [32-6] at ¶ 8. Accordingly, summary judgment is proper on this basis of the breach of contract claim as well.

**2. Defamation Claims**

To prevail on a claim of defamation, Plaintiff must prove the following elements:

(a) A false statement that has the capacity to injure the plaintiff's reputation;

(b) An unprivileged publication, i.e., communication to a third party;

(c) Negligence or greater fault on [the] part of [the] publisher; and

(d) "Either actionability of the statement irrespective of special harm or the existence of special harm caused by publication."

*See Rainer v. Wal-Mart Assocs. Inc.*, 119 So. 3d 398, 403 (Miss. Ct. App. 2013) (quoting *Speed v. Scott*, 787 So. 2d 626, 631 (Miss. 2001)).

"When analyzing defamation claims, Mississippi courts employ a bifurcated process." *Barmada v. Pridjian*, 989 So. 2d 359, 362 (Miss. 2008). The trial court must first "determine whether the occasion calls for a qualified privilege." *Id*. If the court finds that "a qualified privilege does exist, the [c]ourt must then determine whether the privilege is overcome by malice, bad faith, or abuse." *Id*. Accordingly, plaintiffs bear the burden of proof in showing that the communication at issue was not privileged. *See Pointer v. Rite Aid Headquarters Corp.*, 327 So. 3d 159, 165 (Miss. Ct. App.) (citing *Rainer*, 119 So. 3d at 403).

The Mississippi Supreme Court "has defined qualified privilege as a communication made in good faith and on a subject matter in which the person making it has an interest, or in reference to which he has a duty, is privileged if made to a person or persons having a corresponding interest or duty, even though it contains matter which without this privilege would be slanderous." *Barmada*, 989 So. 2d at 362. Furthermore, "communications which would otherwise be defamatory are protected as privileged if they are made in good faith in the prosecution of any inquiry regarding a crime which has been committed." *Bester ex rel. Bester v. Clark*, 963 So. 2d 1190, 1192 (Miss. Ct. App. 2007) (quoting *Downtown Grill Inc. v. Connell*, 721 So. 2d 1113, 1117 (Miss. 1998)). One court has explained that a qualified privilege may be

7

held to exist in any situation in which a court concludes that a statement was made in the course of a duty or protection of an interest which the court deems worthy of protection. *See, e.g., Hooks v. McCall,* 272 So. 2d 925 (Miss. 1973) ("a qualified privilege exists between those directly interested in the same matter.").

Here, Plaintiff has failed to carry the burden of showing that the statements were not subject to a privilege. The Complaint alleges that certain Defendant board members made statements about him including that Plaintiff had "bugged the Office," insinuated that Plaintiff had "trespassed and committed theft," and that "Mr. Banks may be the one stealing cable." These alleged statements were each protected by a qualified privilege. As Defendants argue, the alleged statements are "worthy of protection" because the statements were made to and amongst the board members of JCHC during board meetings regarding issues that directly impact the financial health and reputation of the organization. That is, they were made in good faith and on a subject matter in which the person making it has an interest. Namely, the board has a duty to oversee JCHC's financial management and maintain the company's well-being.

Because the statements meet the standard for a qualified privilege, the next question is "whether the privilege is overcome by malice, bad faith, or abuse." *Barmada*, 989 So. 2d at 364 (quoting *Eckman v. Cooper Tire & Rubber Co.*, 893 So. 2d 1049, 1052 (Miss. 2005)). "Where qualified privilege exists, a presumption of good faith arises." *Id*. Plaintiffs are required to "present affirmative evidence demonstrating actual malice to defeat the qualified privilege." *Id*.

> The Mississippi Supreme Court has explained:
>
> Actual or express malice, as distinguished from malice in law, in its ordinary sense denotes ill will, a sentiment of hate or spite, especially when harbored by one person towards another, exists when one with a sedate, deliberate mind and formed design injures another, as where the person is actuated by ill will in what he does and says, with the design to willfully or wantonly injure another.

*Id.* (quoting *Young v. Jackson*, 572 So. 2d 378, 385 (Miss. 1990)). In response to this motion, Plaintiff has presented nothing to overcome the presumption of good faith. Therefore, judgment in favor of the Defendants on this claim is warranted on the claims of defamation.

### 3. Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress, Plaintiff must prove:

(1)   The defendant acted willfully or wantonly towards the plaintiff by committing certain described actions;
(2)   the defendant's acts are ones "which evoke outrage or revulsion in civilized society";
(3)   the acts were directed at, or intended to cause harm to, the plaintiff;
(4)   the plaintiff "suffered severe emotional distress as a direct result of the acts of the defendant"; and
(5)   "such resulting emotional distress was foreseeable from the intentional acts of the defendant."

*Rainer*, 119 So. 3d 398, 403-04 (quoting *J.R. ex rel. R.R. v. Malley*, 62 So. 3d 902, 906-07 (Miss. 2011)). "Mississippi's standard for a claim of intentional infliction of emotional distress is very high, 'focusing specifically on the defendant's conduct and not the plaintiff's emotional condition.' " *Orr v. Morgan*, 230 So. 3d 368, 376 (Miss. Ct. App. 2017).

In *Orr*, a store employee filed a complaint against her former employers alleging intentional infliction of emotional distress, among other claims. In that case, the employers informed the police that the employee was the last person seen with certain missing electronic device. 230 So. 3d at 371. Also, the employers signed an affidavit against the employee for petit larceny, and the employee was arrested and charged but later found not guilty of the charge. *Id*. The court granted summary judgment in favor of the defendants. *See id*. at 371-72.

On appeal, the court found no error and explained that "[w]hile the [defendants] may have lacked probable cause and, thus, possibly acted with malice in charging [the plaintiff] with petit larceny, the record does not support a finding that their actions would 'evoke outrage or revulsion in civilized society.'" *Id*. at 376; *see also Rainer*, 119 So. 3d at 404 (finding that

9

because an employer had probable cause to initiate a criminal proceeding against an employee, the employer "did not act in such a way to evoke outrage or revulsion in civilized society" and granting defendants' summary judgment).

Here, there is no evidence that Defendants ever contacted the police or participated in the filing of any criminal charges. Rather, the board members had private discussions amongst themselves about activities that they found to be suspicious. Plaintiff's allegations of the Defendants' conduct do not rise to the high level required to evoke outrage. Therefore, judgment as a matter of law is warranted.

### 4. Tortious Interference Claim

To support a claim for tortious interference with contractual relations, a plaintiff must show:

> (1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted.

*Neider v. Franklin*, 844 So. 2d 433, 437 (Miss. 2003) (quoting *Par Indus., Inc. v. Target Container Co.*, 708 So.2d 44, 48 (Miss.1998)). In other words, "[o]ne who intentionally and improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for pecuniary loss resulting to the other from the failure of the third person to perform the contract." *Shaw v. Burchfield*, 481 So. 2d 247, 254–55 (Miss. 1985)

Here, a claim of tortious interference cannot be pursued as a matter of law. In his Complaint, Plaintiff vaguely alleges that the individual Defendants, who were board members of JCHC, maliciously interfered with his contract with JCHC by "intentionally caus[ing] a breach and termination of the contractual relationship and/or the expectancy thereof resulting in the

termination of the employment relationship with Defendant JCHC." [32-1] at ¶62. It first must be noted that the Court has found there was no breach of contract because it was validly terminated. *See*, *supra*, pp. 6-7. However, that alone is not enough to eliminate a tortious interference claim. *See Shaw*, 481 So. 2d at 255 (noting that other states recognize that there is no right of recovery on the part of a discharged employee against one said to have interfered with a contract terminable at will but not specifically so holding).

Notwithstanding, "[w]here a corporation has a contract with another, and where an individual who is an agent of the corporation has responsibilities with respect to the contract, any actions taken in good faith within the scope of those responsibilities are privileged and thus not actionable." *Id*. (citing *Irby v. Citizens Nat'l Bank of Meridian*, 121 So.2d 118, 119 (Miss. 1960) and *Wesley v. Native Lumber Co*., 53 So. 346, 347 (1910)). A board of directors is charged with overseeing the proper operations of their corporation. The uncontroverted evidence shows that, as agents of the corporation, these board members had responsibilities with respect to Plaintiff's employment with JCHC. It is well settled that "one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person." *Id*.; *Vestal v. Oden*, 500 So. 2d 954, 955 (Miss. 1986); *Springer v. Ausbern Const. Co*., 231 So. 3d 1065, 1069 (Miss. Ct. App. 2016).

There being no showing of bad faith in the record sufficient to avoid summary judgment, and there otherwise being no genuine issue of material fact, the motion will be granted as to the claim for tortious interference.

## IV. CONCLUSION

Based on the foregoing, the Court finds that there are no genuine issues of material fact and that the Defendants are entitled to judgment as a matter of law. Accordingly, the Motion for

Summary Judgment [32] filed by Defendants Jefferson Comprehensive Health Center, Inc., Regina Reed, James Walker and Arnell Harried is hereby GRANTED. The Plaintiff's claims are dismissed with prejudice, and a separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58(a).

SO ORDERED AND ADJUDGED this 15th day of June 2022.

/s/   Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE